HARRIS TRZASKOMA

October 2, 2026

**BY ECF**

The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *United States v. Michael Smith,* 24 Crim. 504 (JGK)**

Dear Judge Koeltl:

We write on behalf of Michael Smith to briefly respond to the government's sentencing submission (ECF 61 ("Gov't Mem.")) and correct certain assertions contained therein.

*First*, the government says there is "reason to doubt" Mr. Smith consulted a reputable music industry lawyer regarding his conduct and suggests Mr. Smith may have kept his lawyer in the dark about his use of bots. Gov't Mem. at 9 & n.9. This is untrue. The government has never interviewed the lawyer and appears to be relying on the hearsay statement of a third-party witness who says that *after* Mr. Smith's arrest, the lawyer—unsurprisingly—denied knowledge of the bots. The government's August 20, 2025 disclosures to defense counsel show that at least one witness with knowledge confirmed that the lawyer "100% knew that Smith was manipulating streams" and even had computers in his office "with bots running." The government argues, in the alternative, that the lawyer may have "affirmatively lied to the MLC." (Gov't Mem. at 9). That argument misses the point. The lawyer's state of mind is irrelevant here—what matters is that, at the scheme's outset, Mr. Smith had reason to doubt his conduct was criminal, including because he had fully disclosed his conduct to counsel.[1]

[1] The government also implies that Mr. Smith exclusively relied on AI-generated songs. *E.g.*, Gov't Mem. 1, 3-4, 7. As the PSR explains, however, Mr. Smith initially used his own catalog of music and only turned to AI later. PSR ¶¶ 22-31. In any event, it is not inherently unlawful to use AI to create songs and place those songs on streaming platforms. *E.g.*, Zoe Kleinman, *Spotify Will Not Ban AI-Made Music, Says Boss*, BBC News (Sept. 26, 2023), https://www.bbc.com/news/technology-66882414. Nor does the use of AI make songs categorically ineligible for royalty payments. In fact, in addressing AI-generated music, Spotify has asserted that, with respect to its royalty payments, "all music is treated equally, *regardless of the tools used to make it*." *Spotify Strengthens AI Protections for Artists, Songwriters, and Producers*, Spotify Newsroom (Sept. 25, 2025) https://newsroom.spotify.com/2025-09-25/spotify-strengthens-ai-protections/ (emphasis added). Indeed, around the time of Mr. Smith's communications with the MLC, the MLC was requesting guidance from the U.S. Copyright Office about whether AI-generated musical works were eligible for royalty distributions. Letter from Suzanne V. Wilson, General Counsel and Associate Register of Copyrights, U.S. Copyright Office, to Kris Ahrend, Chief Executive Officer, The Mechanical Licensing Collective (Apr. 20, 2023) https://www.copyright.gov/ai/USCO-Guidance-Letter-to-The-MLC-Letter-on-AI-Created-Works.pdf.

*Second*, the government argues Mr. Smith is, effectively, a repeat offender who should have been more "scrupulous" given a previous "interaction with the justice system" in connection with a *qui tam* action involving health clinics Mr. Smith operated. Gov't Mem. at 9 n.8. As the government's own press release makes clear, however, the civil claims the government is referring to were "allegations only" that were resolved with "no determination of liability." *See* Press Release, U.S. Att'y's Off., W.D.N.C., *Owner and Two Managers of Health Care Practice Agree to Pay $900,000 to Resolve Allegations of Medically Unnecessary Testing* (Sept. 9, 2020) https://www.justice.gov/usao-wdnc/pr/owner-and-two-managers-health-care-practice-agree-pay-900000-resolve-allegations-0. There is no merit to the government's suggestion that an unrelated civil settlement has any relevance to Mr. Smith's culpability here.

*Third*, the government claims that the diffuse nature of the loss here is not relevant, notwithstanding the Guidelines commentary to the contrary, because Mr. Smith supposedly pocketed "every penny of [the] loss." Gov't Mem. at 7-8. That is inaccurate—as explained in Mr. Smith's sentencing submission (ECF 57 ("Smith Mem.") at 21 n.10), the PSR's $8 million-plus loss figure *far* exceeds any amount Mr. Smith actually "pocketed." In any case, nothing in the Guidelines suggests the Sentencing Commission's commentary regarding diffuse losses spread across many victims is inapplicable if the defendant profited from the offense. Rather, the Guidelines commentary is focused on the fact that, where there is a large but diffuse loss, overlapping enhancements will cause the Guidelines to overstate the seriousness of the offense. The government never seriously grapples with the fact that the offense level here is driven almost entirely by the loss enhancement, producing a result that is divorced from common sense. *See* Smith Mem. at 19-21.

*Finally*, the government does not dispute that (1) streaming manipulation has been, and remains, rampant across industry, (2) this is a first-of-its kind prosecution, and (3) no recording artist or songwriter suffered any appreciable loss as a result of the offense. Nonetheless, the government claims—relying in substantial part on letters from industry groups—that a significant sentence is necessary to send a message because the public is "watching this case." Gov't Mem. at 10.[2]

As explained in Mr. Smith's sentencing submission (at 31-35), however, there is serious reason to doubt that a long custodial sentence would serve any marginal deterrent value over and above the booming message that has already been sent by this

[2] The government offers no basis for why the Court should consider the policy views of the handful of advocacy organizations whose letters are attached to the government's submission. While the Court has wide discretion in considering "information concerning the background, character, and conduct of a person" at sentencing, 18 U.S.C. 3661, that discretion should not be extended here. Sentencing is not a forum for policy advocacy by trade associations. The MLC, MFFA, RIAA, and NSAI are not victims and do not claim to be. In any event, the letters largely confirm that this prosecution has already communicated loudly and publicly that "streaming fraud is a crime" (ECF 61-2, MFFA Letter at 2)—an implicit recognition that, before this case, the legal consequences of artificial streaming were far from settled, and further evidence that a custodial sentence is not required for general deterrence.

prosecution. There is also no merit to the suggestion that a sentence of probation would mean that Mr. Smith has not suffered "meaningful punishment." *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 48 (2007). More fundamentally, the government fails to acknowledge the glaring unfairness of attempting to use a novel prosecution—and the liberty of an individual—as a vehicle to attempt to solve the ills of an industry.

Indeed, a custodial sentence will only *diminish* Mr. Smith's ability to repay his debt to the community, including by working to pay off the massive forfeiture judgment against him. To that end, Mr. Smith is seeking steady employment, and has been offered a position doing audio production, mixing, mastering, and recording for a record label, at a salary of $5,000 per month. In anticipation of a potential community service requirement as a component of his sentence, Mr. Smith has also connected with non-profit organizations regarding volunteering opportunities teaching music to underprivileged children or potentially performing music for seniors at non-profit senior care facilities. He is eager to find ways to make amends for his crime, and we can provide additional information about Mr. Smith's efforts in this regard at sentencing.

We respectfully reiterate our request for a sentence of probation.

Respectfully submitted,

*/s/ Justine A. Harris*

Justine A. Harris
Anna Estevao
HARRIS TRZASKOMA LLP
125 Broad Street, 10th Floor
New York, NY 10004
Telephone: (212) 970-6465
Email: jharris@harristrz.com

*/s/ Noell P. Tin*

Noell P. Tin (admitted *pro hac vice*)
Emily D. Gladden (admitted *pro hac vice*)
TIN FULTON WALKER & OWEN, PLLC
301 E. Park Avenue
Charlotte, NC 28203
Telephone: (704) 338-1220
Email: ntin@tinfulton.com

*Attorneys for Michael Smith*

cc: Kevin Mead, Assistant U.S. Attorney (by ECF)
Nicholas Chiuchiolo, Assistant U.S. Attorney (by ECF)